G. RAYMOND GAVERY, Plaintiff-Appellant, v. McMAHON AND ELLIOTT, Defendant-Appellee (Rooks, Pitts and Poust, *et al.*, Defendants).

First District (2nd Division)   No. 1—95—3476

Opinion filed September 17, 1996.

Campbell & DiVincenzo, of Chicago (Anthony S. DiVincenzo, of counsel), for appellant.

Alholm & Monahan, of Chicago (Peter A. Monahan, Mark A. Kuchler, and Patricia M. Noonan, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff G. Raymond Gavery appeals from the circuit court's order granting defendant McMahon & Elliott's motion to dismiss based upon a release claiming error in the court's failure to find that the release excluded Gavery's instant claim against defendant and was unsupported by consideration. Only defendant McMahon & Elliott is involved in this appeal.

On April 5, 1989, Gavery, a physician, entered into an asset purchase agreement (Purchase Agreement) and a noncompetition agreement (collectively Agreements) with Primary Care Family Center (PCFC) in which PCFC purchased his medical practice and Gavery agreed not to compete with PCFC in exchange for 10% of PCFC's gross cash revenue over a 10-year period. Gavery was represented by McMahon & Elliott (hereinafter defendant), a law firm, in connection with the Agreements.

In March of 1990, a dispute arose between PCFC and Gavery regarding whether certain credits were to be applied against the purchase price. Gavery was then represented by Rooks, Pitts & Poust in relation to this dispute. Defendant refused to cooperate with Rooks, Pitts & Poust unless Gavery released defendant from any claims he might have against it.

Rooks, Pitts & Poust advised Gavery he might have "certain claims" against defendant for failing to counsel him properly regarding the draft of the Purchase Agreement. According to Gavery, the only claim discussed with defendant was the claim relating to the credits and neither Rooks, Pitts & Poust nor defendant advised Gavery that he "might have a claim against [defendant] for the failure to properly structure the sale to comply with The Illinois Medical Practice Act." In order to secure defendant's cooperation, Gavery executed a release.

In May of 1993, PCFC filed an action for declaratory relief, seeking to void the noncompetition agreement as violative of the Medical Practice Act of 1987 (the Act). 225 ILCS 60/1 *et seq.* (West 1992). Due to the conflict between the noncompetition agreement and the Act, Gavery had to settle his claim.

Gavery thereafter filed this action, contending: (1) defendant and Rooks, Pitts & Poust breached their contracts for legal services in failing to advise him properly about the validity of the noncompetition agreement; and (2) defendant and Rooks, Pitts & Poust were negligent in failing to advise him that the noncompetition agreement may be in violation of the Act. Gavery subsequently filed an amended complaint adding another count of negligence against Rooks, Pitts & Poust for failing to inform him of the full extent of his claims against defendant. Defendant subsequently filed a section 2—619 motion (735 ILCS 5/2—619 (West 1994) (section 2—619)) to dismiss Gavery's amended complaint, arguing the release barred the claims. Gavery's response to the motion, supported by his affidavit, claimed that he knew about only one claim against defendant, which related to the dispute with PCFC regarding whether credits were to be applied against the purchase price. The circuit court granted defendant's motion to dismiss, noting that the release was very specific and unambiguous. Gavery appeals.

I

Gavery initially contends the circuit court erred in granting defendant's motion to dismiss because the release does not apply to claims not contemplated by the parties.

■ Section 2—619 provides a mechanism to dispose of issues of law or easily proved issues of fact. *Glassie v. Papergraphics, Inc.*, 248 Ill. App. 3d 621, 624, 618 N.E.2d 885 (1993). A dismissal on the pleadings is warranted only where it is clearly apparent that no set of facts can be proved which would entitle plaintiff to recover. *Wood v. Village of Grayslake*, 229 Ill. App. 3d 343, 593 N.E.2d 132 (1992). A motion brought under this section admits all well-pleaded facts. *Geick v. Kay*, 236 Ill. App. 3d 868, 873, 603 N.E.2d 121 (1992).

■ Releases are governed by contract law; accordingly, the intention of the parties to a release must be determined from the instrument itself, and construction of the instrument, where no ambiguity exists, is a matter of law. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664 (1991) (*Whitlock*). The construction of an ambiguous release is a question of fact and parol evidence is admissible to explain what the parties intended. *Whitlock*, 144 Ill. 2d at 447.

Where the releasing party was unaware of claims other than those contemplated by the release, it will be limited to the specific claims contained in the release agreement. *Whitlock*, 144 Ill. 2d at 447. Where both parties were aware of an additional claim at the time of signing the release, however, the general release language of the agreement will be given effect to release that claim as well. *Whitlock*, 144 Ill. 2d at 447.

■ Gavery submits a release cannot be construed to apply to claims not in the contemplation of the parties at the time the release was executed. The recitals of the instant release, however, specifically provide that: defendant "represented Gavery, among other matters, in connection with" the sale of his business; defendant negotiated the Purchase Agreement and the noncompetition agreement; PCFC made payments to Gavery but Gavery believed the amounts of the payments were incorrect; Gavery was advised by Rooks, Pitts & Poust that he "may have causes of action against [defendant] as a result of Gavery's signing the Agreements"; defendant informed Rooks, Pitts & Poust "there may be a conflict between [defendant] and Gavery regarding the sale of Primary Care"; and Gavery "consulted with Rooks, Pitts and Poust regarding the potential cause of action he may have against [defendant]." The release further states Gavery waives all claims "as a result of the sale of the assets and goodwill of Primary Care, *including but without limitation, any injury or damage sustained by Gavery by virtue of entering into the Asset Purchase Agreement and/ or the Non-Competition Agreement.*" (Emphasis added.) The release agreement is very specific and unambiguous: Gavery was advised by Rooks, Pitts & Poust he may have claims against defendant arising out of the Agreements. Gavery waived all claims against defendant concerning the Agreements. Accordingly, the release bars Gavery's claims.

Gavery argues he intended only to waive his claim relating to the credit arrangement under the Purchase Agreement and that a party cannot waive a claim it is unaware of, relying upon *Whitlock*, 144 Ill. 2d at 447-48, and *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 587 N.E.2d 494 (1992). Those cases are distinguishable from the

present case, however, because they involve either ambiguous or general releases.

Gavery contends *Carlile v. Snap-on Tools,* 271 Ill. App. 3d 833, 648 N.E.2d 317 (1995) *(Carlile)*, is analogous to the present case. In *Carlile,* plaintiff wanted to terminate his Snap-on tools dealership. In order to terminate his dealership and be reimbursed for inventory immediately, plaintiff was instructed to sign a form after explaining that the termination was not caused by Snap-on Tools Corporation. 271 Ill. App. 3d at 836. Plaintiff was also required to sign a "Termination Agreement," which provided that Snap-on would pay him "for the return of his inventory at current dealer prices." 271 Ill. App. 3d at 836. The final paragraph of the termination agreement contained a release provision which stated that both parties to the agreement "waive any and all claims they may have against each other arising out of the [Snap-on] Dealership terminated by this Agreement." 271 Ill. App. 3d at 836. The *Carlile* court reversed the trial court's grant of summary judgment for defendants, finding that the words of general release in the termination agreement applied only to the inventory. 271 Ill. App. 3d at 840. There was no evidence there to indicate "plaintiff was aware of a legal fraud claim when he signed the release," and a question of fact remained as to whether defendants' conduct was fraudulent. 271 Ill. App. 3d at 840.

The release in the present case is readily distinguishable from the extremely broad and sweeping release in *Carlile.* The release in *Carlile,* unlike the release in the instant case, contained no recitals setting forth the facts upon which the release was based. Although plaintiff in *Carlile* read the termination agreement prior to signing, it mainly dealt with Snap-on's promise to pay for returned inventory at current dealer prices and only the last paragraph addressed the release of claims. 271 Ill. App. 3d at 836. Unlike Gavery, obviously a sophisticated businessman and physician, plaintiff in *Carlile* was a high school graduate who was unrepresented by counsel. 271 Ill. App. 3d at 835. The *Carlile* court also noted that plaintiff may have been pressured by Snap-on to sign the termination agreement. Consequently, the court in *Carlile* reversed and remanded, in part, because plaintiff's claim of duress raised a question of fact. *Carlile,* therefore, contains many circumstances, including, most significantly, a vague and broadly sweeping release provision, which differ substantially from the present case. Accordingly, Gavery's contention must be rejected.

Gavery also argues that there are issues of fact concerning the scope of the release because his specific malpractice claims were not within the contemplation of the parties when they executed the

release, relying upon his uncontradicted affidavit. Parol evidence, however, is admissible *only* where a court determines that a contract is ambiguous. *Whitlock*, 144 Ill. 2d at 447. The release in the present case unambiguously applies to the Purchase Agreement and the non-competition agreement. Gavery, who was advised by independent counsel regarding the release, specifically released his claims relating to the Agreements. The circuit court properly dismissed his complaint.

## II

Gavery next asserts the circuit court erred in dismissing his complaint because the release was unsupported by consideration or, alternatively, the consideration was inadequate.

## A

■ A release must be based upon consideration, which consists either of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other. *White v. Village of Homewood*, 256 Ill. App. 3d 354, 356-57, 628 N.E.2d 616 (1993). The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration because there is no detriment. *White*, 256 Ill. App. 3d at 357.

The release agreement states that Gavery may have a cause of action against defendant; defendant agrees "to cooperate without further charge," provided that Gavery release defendant from claims he may have; and defendant agrees "to release any claims it may have or believe it has against Gavery." Despite this explicit language, Gavery contends there was no consideration because defendant, as Gavery's former counsel, was legally and ethically required to cooperate with him. Gavery reasons these alleged legal and ethical obligations created a preexisting duty. Gavery's argument is based on the attorney-client relationship. The attorney-client relationship terminates, however, when the matter for which the attorney has been retained is completed. See *Herbster v. North American Co. for Life & Health Insurance*, 150 Ill. App. 3d 21, 28, 501 N.E.2d 343 (1986).

■ The release provides that defendant was Gavery's "former counsel." Gavery asserts for the first time in his reply brief that a question of fact exists as to whether the attorney-client relationship was terminated. Failure to raise an issue in an opening brief results in a waiver of that issue. See *People v. Williams*, 200 Ill. App. 3d 503, 513, 558 N.E.2d 261 (1990); 155 Ill. 2d R. 341(e)(7). Gavery has waived this issue.

Waiver aside, the record demonstrates that defendant had completed the negotiation and sale of Gavery's business prior to Gavery's retention of Rooks, Pitts & Poust. Gavery thereafter considered pursuing legal action against defendant. Gavery acknowledges in his affidavit that in his dispute with PCFC, he needed the help of defendant, his counsel "at the time of the sale." The matter for which defendant was retained was completed and Gavery regarded defendant as his former counsel. Accordingly, the attorney-client relationship was terminated.

The record also reveals that defendant was not Gavery's fiduciary at the time the release was executed. See generally *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 595, 630 N.E.2d 940 (1994). Gavery had retained independent counsel to represent him in his dispute with PCFC and was informed by independent counsel that he "may have causes of action against" defendant. Gavery and defendant then had opposing interests. Consequently, no fiduciary relationship existed. See *Weisblatt v. Colky*, 265 Ill. App. 3d 622, 625-26, 637 N.E.2d 1198 (1994); see also Article VIII, Illinois Rules of Professional Conduct, 134 Ill. 2d R. 1.7.

Notwithstanding the alleged existence of any legal or ethical obligations, defendant agreed "to release *any claims* it may have or believe it has against Gavery." (Emphasis added.) Gavery argues defendant never waived its claim for legal fees because legal fees were never discussed in the release. Gavery, however, owed fees to defendant when the release was executed. Defendant released "any claims," which could have included its claim for Gavery's fees and, therefore, relinquished a right. Defendant also agreed to cooperate "without further charge to Gavery in pursuit of his remedies." By these promises, defendant forewent a right and undertook an obligation. The release was supported by consideration.

B

■ Gavery alternatively contends the amount of consideration was inadequate to support the release and indicates that the parties did not contemplate a release of the claims made in this case.

A court's inquiry into whether a contract is supported by consideration does not extend to examining the adequacy of the consideration. *Goodwine State Bank v. Mullins*, 253 Ill. App. 3d 980, 1011, 625 N.E.2d 1056 (1993). It is not a court's function to review the amount of consideration unless the amount is so grossly inadequate as to shock the conscience of the court. *Bonner v. Westbound Records, Inc.*, 76 Ill. App. 3d 736, 743, 394 N.E.2d 1303 (1979). Mere inadequacy of consideration, in the absence of fraud or unconscionable

advantage, ordinarily is insufficient to justify setting aside a contract. *Mullins*, 253 Ill. App. 3d at 1011.

Gavery was advised by independent counsel in relation to the release and he was informed that he might have claims against defendant arising from the Purchase Agreement and the noncompetition agreement. Gavery has not alleged fraud or unconscionable advantage and the record shows none. The consideration was not so insufficient as to shock the conscience of the court.

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.