134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Sandra M. TARELLO and Tamara J. Wolff, Plaintiffs-Appellants,
v.
JOHN'S GARAGE III, LTD., Defendant-Appellee.
 No. 97-1473.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 17, 1997.
Decided Feb. 4, 1998.
 
 Before Hon. WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Sandra Tarello and Tamara Wolff, judgment creditors of John's Garage III, LTD., appeal the district court's denial of their motion for a writ of execution against JGC, Inc. Tarello and Wolff alleged that JGC owed John's Garage $40,000 on a contract for the sale of business inventory and that, as judgment creditors of John's Garage, they were entitled to the $40,000. JGC and John's Garage agreed to reduce the original contract price of $500,000 by $40,000 after JGC discovered the inventory was worth substantially less than the parties believed when they signed the contract. Because this contract modification was supported by consideration and was enforceable, we affirm the judgment of the district court.
 
 FACTS
 
 2
 On October 26, 1995, Tarello and Wolff filed suit against John's Garage for sexual harassment. John's Garage failed to appear or answer the complaint and, on March 6, 1996, judgment was entered in favor of Tarello and Wolff. On April 4, 1997, the district court awarded damages to Tarello of $56,000, and to Wolff of $54,000. In an effort to collect their damage awards, Tarello and Wolff pursued supplementary proceedings under Federal Rule of Civil Procedure 69(a) against various parties alleged to possess assets belonging to John's Garage. One such party was JGC.
 
 
 3
 John's Garage owned and operated a restaurant in Vernon Hills, Illinois. According to Tarello and Wolff, the restaurant was John's Garage's sole asset. On October 2, 1995, John's Garage and JGC entered into a contract whereby John's Garage would sell the lease, inventory, fixtures and equipment of the restaurant to JGC for $500,000. The contract provision at issue here specifically stated that the price of the inventory, personalty, fixtures and improvements was $40,000. The contract also provided that the price of the equipment was $368,000, and the price of the restaurant's good will was $30,000. JGC also agreed to assume a loan for the lease in the amount of $62,000.
 
 
 4
 On October 3, 1995, JGC refused to pay John's Garage the full purchase price. In an affidavit submitted to the district court, Christos Karageorgis, the president of JGC, explained that, after reviewing the inventory at closing, "it was determined that the inventory was substantially less than the $40,000, which was the agreed amount of inventory that was to remain on hand at the time of closing." The parties to the contract orally agreed to reduce the purchase price by $40,000, resulting in a total price of $460,000. The agreement to reduce the purchase price was never reduced to writing. In his affidavit, Karageorgis also stated that had it not been for the modification, JGC would have refused to complete the transaction.
 
 
 5
 Tarello and Wolff filed a motion for the issuance of a writ of execution against JGC for the $40,000. They argued that because the contract modification was not supported by consideration, it was unenforceable, and JGC owed John's Garage $40,000. Tarello and Wolff asserted that, as John's Garage's judgment creditors, they were entitled to the $40,000.
 
 
 6
 After conducting a hearing, the district court denied the motion for a writ of execution. First, the court suggested that consideration may not have been a necessary component of the contract modification. Alternatively, the district court found that the completion of the transaction without litigation constituted adequate consideration for the contract modification. The court concluded, therefore, that John's Garage would not have been able to claim the $40,000 at issue and, thus, John's Garage's judgment creditors, Tarello and Wolff, were not entitled to the money.
 
 
 7
 On appeal, Tarello and Wolff assert that the district court erred in finding that John's Garage and JGC entered into a valid contract modification because (1) a valid contract modification requires consideration; and (2) JGC had no legitimate reason to sue John's Garage and, therefore, forgoing litigation did not constitute adequate consideration.
 
 ANALYSIS
 
 8
 Federal Rule of Civil Procedure 69(a) governs actions to enforce judgments, and instructs federal courts to apply state procedural and substantive law in such proceedings. Cacok v. Covington, 111 F.3d 52, 53 (7th Cir.1997); Matos v. Richard A. Nellis, Inc., 101 F.3d 1193, 1195 (7th Cir.1996). The parties agree that Illinois law controls. Under Illinois law,
 
 
 9
 a judgment creditor ... is entitled to prosecute supplementary proceedings for the purpose of examining the judgment creditor or any other person to discover assets or income of the debtor ... and of compelling the application of [such] assets or income discovered toward the payment of the amount due under the judgment.
 
 
 10
 735 ILCS 5/2-1402(a); see also Ill. Sup.Ct.R. 277 ("a supplementary proceeding ... may be commenced .... against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor.") Under these provisions, it was proper for Tarello and Wolff to attempt enforcement proceedings against JGC on the theory that JGC was indebted to John's Garage, the judgment debtor.
 
 
 11
 There is no question that JGC and John's Garage had a valid sales agreement in which JGC promised to pay $500,000 for the assets of a restaurant owned by John's Garage. Moreover, the parties do not dispute that JGC paid only $460,000 in exchange for those assets. The question presented by this case is whether JGC and John's Garage entered into a valid and enforceable contract modification.
 
 
 12
 Under Illinois law, "parties to a written contract may alter or modify its terms by a subsequent oral agreement." A.W. Wendell & Sons, Inc. v. Qazi, 254 Ill.App.3d 97, 193 Ill.Dec. 247, 626 N.E.2d 280, 287 (Ill.App.Ct.1993); see Tadros v. Kuzmak, 277 Ill.App.3d 301, 213 Ill.Dec. 905, 660 N.E.2d 162, 170 (Ill.App.Ct.1995), app. denied, 166 Ill.2d 541, 216 Ill.Dec. 5, 664 N.E.2d 642 (Ill.1996); E.A. Cox Co. v. Road Savers Int'l Corp., 271 Ill.App.3d 144, 207 Ill.Dec. 815, 648 N.E.2d 271, 277 (Ill.App.Ct.1995). The existence of an oral modification, and the terms and conditions of the modification are questions of fact to be determined by the fact-finder. E.A. Cox Co., 207 Ill.Dec. 815, 648 N.E.2d at 277; Qazi, 193 Ill.Dec. 247, 626 N.E.2d at 288. As a general rule, contract modifications must be supported by consideration to be valid. See Robinson v. Ada S. McKinley Community Servs., 19 F.3d 359, 363 (7th Cir.1994) (applying Illinois law); Greenberg v. Mallick Management, 173 Ill.App.3d 653, 123 Ill.Dec. 305, 527 N.E.2d 943, 948 (Ill.App.Ct.), app. denied, 123 Ill.2d 557, 128 Ill.Dec. 890, 535 N.E.2d 401 (Ill.1988). However, under the UCC, which Illinois has adopted in full, modification to a contract for the sale of "goods" need not be supported by consideration to be enforceable. 810 ILCS 5/2-209(1); see Ray Dancer, Inc. v. DMC Corp., 175 Ill.App.3d 997, 125 Ill.Dec. 447, 530 N.E.2d 605, 609 (Ill.App.CT.1988); Greenberg, Inc., 123 Ill.Dec. 305, 527 N.E.2d at 948-49.
 
 
 13
 Whether consideration is present is a question of law to be determined by the courts. Kapoor v. Robins, 214 Ill.App.3d 248, 157 Ill.Dec. 874, 573 N.E.2d 292, 297 (Ill.App.Ct.1991); Protective Ins. Co. v. Coleman, 144 Ill.App.3d 682, 98 Ill.Dec. 914, 494 N.E.2d 1241, 1246 (Ill.App.Ct.1986). However, Illinois courts will not review the adequacy of consideration absent fraud or unconscionable advantage. Gavery v. McMahon & Elliott, 283 Ill.App.3d 484, 219 Ill.Dec. 144, 670 N.E.2d 822, 827 (Ill.App.Ct.1996); Goodwine State Bank v. Mullins, 253 Ill.App.3d 980, 192 Ill.Dec. 901, 625 N.E.2d 1056, (Ill App.Ct.1993), app. denied, 155 Ill.2d 563, 198 Ill.Dec. 542, 633 N.E.2d 4 (Ill.1994). In Illinois, consideration is defined as "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other." Gavery, 219 Ill.Dec. 144, 670 N.E.2d at 826. Forgoing legal action or compromising a disputed claim can serve as consideration. See, e.g ., Kapoor, 573 N.E.2d at 297; Keller v. State Farm Ins. Co., 180 Ill.App.3d 539, 129 Ill.Dec. 510, 536 N.E.2d 194, 198 (Ill.App.Ct.1989); Protective Ins. Co., 98 Ill.Dec. 914, 494 N.E.2d at 1249.
 
 
 14
 In this case, the parties vigorously dispute whether the purchase price modification was to a contract for the sale of goods for which consideration was unnecessary, or whether the modification was to a contract for "bulk transfer" or some other type of contract for which consideration was necessary. We need not decide the question because, as discussed infra, consideration for the purchase price modification existed. However, for the sake of completeness, we address the question.
 
 
 15
 JGC argues that consideration was unnecessary because the contract was for the sale of goods. On the other hand, Tarello and Wolff maintain that because the purchase price agreement modified a contract for a bulk transfer or a sale of assets, consideration was necessary. Although the specific provision of the contract that was subsequently modified arguably pertained to the sale of "goods,"[1] the contract also provided for the transfer of a lease. In Greenberg, an Illinois court rejected an almost identical argument--that modification to a single provision of a contract did not require consideration because that provision dealt only with the sale of goods (or "personalty")--because the contract also contained an agreement not to compete. 123 Ill.Dec. 305, 527 N.E.2d at 948-49. The court held that equity and logic precluded fragmentation of contract enforcement and, therefore, that any modification to the original contract required consideration. Id. at 949. Here, the original contract provided not only for the sale of goods (or "inventory"), but also for the sale of a lease. Under the reasoning of Greenberg, any modification of the original contract thus required consideration.
 
 
 16
 Consideration for the purchase price modification existed. A material term of the original contract was not satisfied: namely, John's Garage failed to present inventory worth $40,000 at closing. Thus, JGC was under no obligation to complete the contract. JGC's agreement to complete the sale therefore constituted consideration for the lower purchase price.
 
 
 17
 Moreover, even if, as Tarello and Wolff argue, JGC "assumed the risk" that the value of the inventory would be less than the agreed upon price, the fact that a dispute arose and JGC would not have performed on the contract without the purchase price modification shows that the modification settled a disputed claim. As stated above, the resolution of disputed claims constitutes consideration under Illinois law. Although Tarello and Wolff argue that JGC had no legitimate reason to sue John's Garage and therefore did not "forgo litigation," whether JGC had reason to sue is irrelevant. JGC "gave up" its good faith claim that John's Garage breached the sales contract by failing to present inventory worth $40,000 at closing. In entering into the modification, JGC thereby "gave up" its right to either walk away from the deal or to force John's Garage to litigate the issue of breach if John's Garage wanted the contract performed as written. In either case, consideration supported the purchase price modification.
 
 
 18
 Finally, for the first time, Tarello and Wolff argue that because a member of the board of John's Garage was also a member of JGC's board, the agreement to modify the purchase price may have been invalid. This assertion is waived because neither the claim nor the factual basis were presented to the district court. Oates v. Discovery Zone, 116 F.3d 1161, 1168 (7th Cir.1997). Moreover, the assertion is waived under Federal Rule of Appellate Procedure 28 for failure to support with citation to authority or coherent argument.[2] Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 n. 1 (7th Cir.1996). In any event, the contract was completed about one month before the discrimination suit was filed, and more than five months before judgment was entered in favor of Tarello and Wolff. Under these circumstances, it would be extremely difficult to establish fraudulent transfer.
 
 CONCLUSION
 
 19
 The modification of the contract between John's Garage and JGC for the purchase of the assets of a restaurant was supported by consideration. Specifically, JGC agreed to complete the sale even though John's Garage did not produce inventory in the amount promised under the original contract. Moreover, even if JGC legally bore the risk of the value of the inventory, JGC had a good faith belief that it did not. Therefore, resolution of this (potentially) disputed claim constituted consideration for the purchase price modification. For these reasons, Tarello and Wolff are not entitled to enforce the original contract as judgment creditors of John's Garage, and the district court's judgment is AFFIRMED.
 
 
 
 [1]
 Tarello and Wolff dispute even this assertion, arguing that "sale of goods" refers only to sales between merchants in the ordinary course of business, and not to one-time sales. However, they do not cite any caselaw supporting this narrow definition, nor could we find any
 
 
 [2]
 Although their brief is not clear, we assume Tarello and Wolff are attempting to make some sort of fraudulent transfer argument for voiding the oral agreement to modify the purchase price