(No. 71112.

FARM CREDIT BANK OF ST. LOUIS, Appellant, v. WALTER H. WHITLOCK *et al.*, Appellees.

*Opinion filed October 17, 1991.*

HEIPLE, J., dissenting.

Law Offices of Gustine & Theivagt, Ltd., of Carrollton (Charles E. Theivagt, of counsel), for appellant.

Steven N. Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellees.

JUSTICE MORAN delivered the opinion of the court:

In January 1987, plaintiff, Farm Credit Bank of St. Louis (the Bank), filed a mortgage foreclosure suit in the circuit court of Greene County against the farm of Walter H. and Mary G. Whitlock (parents). Darrell L. Whitlock, Barbara S. Whitlock, Ronald K. Whitlock, Patricia A. Whitlock, and Helen M. (Whitlock) Phillips (collectively referred to as the children) were also named as defendants in the suit. The defendants answered the complaint with an affirmative defense, alleging that a general release in a contract between the Bank and the children served as a bar to the foreclosure suit. Both the

Bank and the defendants filed motions for summary judgment, and the court ruled in favor of the defendants.

The Bank appealed the court's decision, and, with one justice dissenting, the appellate court affirmed. (202 Ill. App. 3d 609.) The Bank then filed a petition for leave to appeal to this court (134 Ill. 2d R. 315), which was allowed.

The issues raised are whether: (1) the mutual release paragraph in the "Agreement for Deed in Lieu of Foreclosure" released the loan on the parents' farm; and (2) the parents were accommodation makers on the loan.

As this case comes to us on appeal from a grant of summary judgment, all of the facts are gleaned from the pretrial motions, and motions for summary judgment. In 1976, the parents and the children were engaged in separate farming partnerships. In late 1976, the children attempted to purchase a 200-acre farm, and approached the Bank concerning financing the $400,000 purchase price. At that time, the Bank refused to make the requested loan.

Following further discussions among the Bank, the children, and the parents, the Bank agreed to loan the children the entire purchase price for the farm, provided that the parents pledge their farm as security. (See Ill. Rev. Stat. 1987, ch. 26, par. 3—415(1).) Two separate loans were arranged to finance the purchase. The first loan (Loan #1) consisted of a debt instrument (Loan No. 382076—1), in the amount of $214,200, allocating the money as follows: $41,720 to pay off a prior lien on the parents' farm; $160,000 for use by the children on the purchase of the new farm; and $12,452 for closing fees on the transaction. Loan #1 was secured by the parents' 200-acre farm.

The second loan (Loan #2) consisted of a debt instrument (Loan No. 382075—2—0), in the principal amount

of $255,000, to be used for the remainder of the purchase price and closing costs on the children's purchase. This loan was secured by the farm that the children purchased.

Loan #1 was executed by all the defendants (the parents and the children) on February 9, 1977, and Loan #2 was executed by the children alone on February 10, 1977. In his discovery deposition, Walter Whitlock testified that the understanding between him and the children was that the parents would continue to pay what they had originally owed on their preexisting mortgage with the Bank, while the children would pay off all of the excess debt on both loans.

The children subsequently defaulted on Loan #2. In order to avoid foreclosure, the Bank and the children negotiated a transfer of the new land to the Bank in exchange for a "Deed in Lieu of Foreclosure and Mutual Release of Liability" (release agreement). In pertinent part, section 5 of the release agreement, provides:

"As a part of the consideration of this agreement, Borrower, and each of them if more than one, for Borrower and for the heirs, personal representatives, successors and assigns of Borrower, does hereby remise, release and forever discharge The Federal Land Bank of St. Louis, The Federal Land Bank Association of Carrollton-Carlinville, Illinois, and the officers, employees, directors and stockholders thereof, and *Bank*, for itself and its successors and assigns, *does hereby remise, release and forever discharge Borrower*, and each of them if more than one, of and from all manner of actions, causes and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands, whatsoever, at law or in equity, and *particularly without limiting the generality of the foregoing all claims relating to the mortgage loan transaction aforesaid and the conveyance of title hereunder, which either party* and their respective heirs,

personal representatives, successors, assigns and agents *ever had, now have or may have in the future*, for, upon or by reason of any matter, cause or thing, whatsoever." (Emphasis added.)

In January 1987, the Bank filed the instant action to foreclose against the parents' farm. In an affirmative defense, the defendants responded that the aforementioned deed-back liability release acted as a bar to the foreclosure action. See Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d).

Relying on their affirmative defense, the defendants filed a motion for summary judgment, with which they submitted the affidavit of Darrell L. Whitlock. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) Whitlock stated that, after signing the release, he was informed and believed that the document had extinguished all his liability to the Bank. The trial court granted the defendants' motion, finding: (1) that the credit arrangements constituted a single transaction; (2) that the deed-back liability release encompassed the liability of the children on the entire purchase price of the land; and (3) that the parents were accommodation parties, who had been discharged of liability through the failure of the Bank to expressly reserve recourse rights upon release of the underlying debt instrument. (See Ill. Rev. Stat. 1987, ch. 26, par. 3—606(1)(a).) The appellate court, with one judge dissenting, affirmed (202 Ill. App. 3d 609), and this court allowed the Bank's petition for leave to appeal (134 Ill. 2d R. 315).

The Bank initially contends that the aforementioned general release language in the release agreement is restricted solely to Loan #2. The Bank argues that it was improper for the trial court to look beyond the language of the release agreement itself, as there are numerous references in the release agreement showing that it was meant to deal exclusively with Loan #2. For example,

the Bank notes that the loan transaction number for Loan #2 ("382075—2—0") was in the upper right-hand corner of the release agreement. Additionally, the four recitals at the beginning of the release agreement deal with Loan #2 exclusively: the mortgaged real estate that is specifically described is that for Loan #2; there is a reference to a note dated February 10, 1977 (the date Loan #2 was executed); the release agreement references an original principal sum of $255,000 (the amount of Loan #2); there is a reference to the book and page number in the county recorder's office where Loan #2 is recorded; and there are references to "said note," and the Bank's acceleration of that note throughout the release agreement. The Bank also argues that an analysis of the defendants' conduct surrounding the entire transaction (especially a continued payment of Loan #1 after the execution of the release agreement) shows a knowledge on defendants' part that the release agreement dealt with Loan #2 specifically.

The defendants argue that numerous factors support the conclusion that the general release language in the release agreement should apply to Loan #1 as well as Loan #2: (1) Loan #1 was executed by the parents *and* the children; (2) Loan #1 proceeds, in excess of the balance of the parents' then-existing mortgage, were paid directly to the owners of the land that the children purchased; (3) the children paid the portion of the loan payments on Loan #1 that was in excess of the parents' original mortgage payments; (4) the Bank's manager suggested this financing plan; and (5) the Bank's agents and attorneys prepared all the necessary loan documents.

A court properly grants summary judgment when the pleadings, depositions and admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law. (*Local 165 v. Bradley* (1986), 149 Ill. App. 3d 193, 204; Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) We find that unresolved questions of fact relating to the release agreement bar summary judgment in this case.

A release is a contract, and therefore is governed by contract law. (*Polo National Bank v. Lester* (1989), 183 Ill. App. 3d 411, 414.) The intention of the parties to contract must be determined from the instrument itself, and construction of the instrument where no ambiguity exists is a matter of law. *Sutton Place Development Co. v. Bank of Commerce & Industry* (1986), 149 Ill. App. 3d 513, 516.

A contract will be considered ambiguous if it is capable of being understood in more sense than one. (*National Tea Co. v. American National Bank & Trust Co.* (1981), 100 Ill. App. 3d 1046, 1049.) Where a court determines that a contract is ambiguous, its construction is then a question of fact, and parol evidence is admissible to explain and ascertain what the parties intended. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288.) For the following reasons, we find that the general release is ambiguous on its face.

Where the releasing party was unaware of other claims, Illinois case law has restricted general releases to the specific claims contained in the release agreement. (See, *e.g*, *Todd v. Mitchell* (1897), 168 Ill. 199.) However, where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well. *Frank Rosenberg, Inc. v. Carson Pirie Scott & Co.* (1963), 28 Ill. 2d 573, 578; *Perschke v. Westinghouse Electric Corp.* (1969), 111 Ill. App. 2d 23, 31; *Cwik v. Condre* (1954), 4 Ill. App. 2d 380, 383.

There are specific references in the release agreement to Loan #2, and none to Loan #1. The release agreement is indexed by number to Loan #2. It recites that the release of the borrowers from "said indebtedness" is fair value for the deed-back of the real estate described in the agreement, and that the release is the "sole inducement" for that conveyance. A general release is inapplicable to an unknown claim. *Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 566.

Nevertheless, the release agreement recites in section 5 that the Bank releases the borrowers from all manner of actions, suits, debts, promises, damages, claims and demands whatsoever, and, *"particularly without limiting the generality of the foregoing,"* to all claims relating to Loan #2. (Emphasis added.) In other words, section 5 states that the Bank releases the borrowers from all actions and claims, but *particularly* those relating to Loan #2.

Both parties were aware of claims which might arise from Loan #1. It is not clear on the face of the release agreement whether the parties intended to limit the release to Loan #2 or to extend it to Loan #1 as well. Thus, we conclude that the parties' intent must be determined from an examination of extrinsic evidence by the trier of fact.

In granting a motion for summary judgment it is improper for the court to speculate in order to determine the parties' intent, as the courts below have done. Caution must be exercised in granting summary judgment so as not to preempt the right of a party to present the factual basis of his case to the fact finder. (*Chaplin v. Geiser* (1979), 79 Ill. App. 3d 435.) We therefore reverse the judgments of the circuit and appellate courts.

As this case comes to this court on appeal from a grant of summary judgment, it is necessary to remand the cause for further proceedings. Because we are re-

manding the cause for further factual development, it is not necessary for us to address the remaining issue raised by the Bank.

For the foregoing reasons, the decisions of the appellate and trial courts are reversed, and the cause is remanded to the circuit court of Greene County for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*

JUSTICE HEIPLE, dissenting:

In January 1977, the Whitlock children approached the Farm Credit Bank of St. Louis (Bank) to finance the purchase of additional land for their farming operation. The Bank initially refused the loan due to insufficient credit worthiness but eventually agreed to the loan on condition that the parents would offer their own farm as collateral. The cash necessary to complete the purchase was advanced on two separate notes. Note #1 was secured by the equity in the parents' farm. Note #2 was secured by the equity in the children's farm. The children subsequently defaulted and, to avoid foreclosure, negotiated a deed of their land to the Bank in lieu of foreclosure. This settlement included the execution of a mutual release of liability between the Whitlocks and the Bank. The release provides, in pertinent part:

"5. As a part of the consideration of this agreement, Borrower *** does hereby remise, release and forever discharge The Federal Land Bank of St. Louis, the Federal Land Bank Association of Carrollton-Carlinville, Illinois, and the officers, employees, directors and stockholders thereof, and Bank, for itself and its successors and assigns, does hereby remise, release and forever discharge Borrower *** from all manner of actions, causes and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, trespasses, damages,

judgments, executions, claims and demands, whatsoever, at law or in equity, and particularly without limiting the generality of the foregoing all claims relating to the mortgage loan transaction aforesaid and the conveyance of title hereunder, which either party and their respective heirs, personal representatives, successors, assigns and agents ever had, now have or may have in the future, for, upon or by reason of any matter, cause or thing, whatsoever."

In January 1987, the Bank initiated foreclosure proceedings against the parents' farm. Defendants moved for summary judgment, citing the release as a bar. The trial court granted the motion, finding that the two loan agreements constituted one single transaction and that the release was a general release encompassing the liability of the Whitlock children on the entire purchase price of the new land. The appellate court affirmed.

The majority opinion reverses, finding that factual issues concerning the extent of the release remain, making summary judgment inappropriate. The trial and appellate court rulings were correct. The majority opinion of this court is wrong. Accordingly, I respectfully dissent.

The loan and release agreements are contracts and, as the majority correctly concedes, governed by contract law. Contracts are properly interpreted by examination of the instruments themselves. The intentions of the parties to a contract must be determined from the instrument itself, barring ambiguity. (*Sutton Place Development Co. v. Bank of Commerce & Industry* (1986), 149 Ill. App. 3d 513.) The majority, in order to justify reversal, concludes that the release agreement is ambiguous and, therefore, parol evidence is admissible to determine what the parties intended upon its execution. However, in reviewing the language of the release, the majority states that "section 5 states that the Bank releases the

borrowers from all actions and claims, but *particularly* those relating to Loan #2." (Emphasis in original.) (144 Ill. 2d at 448.) This statement, which is offered by the majority to support its ruling, in fact proves the opposite. The release in this case is clear, complete and unambiguous.

The trial court, in considering the motion for summary judgment, had before it all of the relevant documents in the case. The release being clear on its face, there is no occasion to consider parol evidence. Summary judgment is properly rendered when the pleadings, depositions, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).

Accordingly, I dissent.