1-95-3476

G. RAYMOND GAVERY, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellant, ) Cook County.
 )
 v. ) 
 )
McMAHON & ELLIOTT, ) 
 ) 
 Defendant-Appellee, ) 
 )
 and )
 ) 
ROOKS, PITTS & POUST, and ) 
DAVID J. PRITCHARD, ) Honorable
 ) Kathy M. Flanagan,
 Defendants. ) Judge Presiding



 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 Plaintiff G. Raymond Gavery appeals from the circuit court's
order granting defendant McMahon & Elliott's motion to dismiss
based upon a release claiming error in the court's failure to find
that the release excluded Gavery's instant claim against defendant
and was unsupported by consideration. Only defendant McMahon &
Elliott is involved in this appeal.
 On April 5, 1989, Gavery, a physician, entered into an asset
purchase agreement (Purchase Agreement) and a non-competition
agreement (collectively Agreements) with Primary Care Family Center
(PCFC) in which PCFC purchased his medical practice and Gavery
agreed not to compete with PCFC in exchange for 10% of PCFC's gross
cash revenue over a 10-year period. Gavery was represented by
McMahon & Elliott (hereinafter defendant), a law firm, in
connection with the Agreements.
 In March of 1990, a dispute arose between PCFC and Gavery
regarding whether certain credits were to be applied against the
purchase price. Gavery was then represented by Rooks, Pitts &
Poust in relation to this dispute. Defendant refused to cooperate
with Rooks, Pitts & Poust unless Gavery released defendant from any
claims he might have against it.
 Rooks, Pitts & Poust advised Gavery he might have "certain
claims" against defendant for failing to counsel him properly
regarding the draft of the Purchase Agreement. According to
Gavery, the only claim discussed with defendant was the claim
relating to the credits and neither Rooks, Pitts & Poust nor
defendant advised Gavery that he "might have a claim against
[defendant] for the failure to properly structure the sale to
comply with The Illinois Medical Practice Act." In order to secure
defendant's cooperation, Gavery executed a release.
 In May of 1993, PCFC filed an action for declaratory relief,
seeking to void the non-competition agreement as violative of the
Medical Practice Act of 1987 (the Act). 225 ILCS 60/1 et seq.
(West 1992). Due to the conflict between the non-competition
agreement and the Act, Gavery had to settle his claim.
 Gavery thereafter filed this action, contending: (1) defendant
and Rooks, Pitts & Poust breached their contracts for legal
services in failing to advise him properly about the validity of
the non-competition agreement; and (2) defendant and Rooks, Pitts
& Poust were negligent in failing to advise him that the non-
competition agreement may be in violation of the Act. Gavery
subsequently filed an amended complaint adding another count of
negligence against Rooks, Pitts & Poust for failing to inform him
of the full extent of his claims against defendant. Defendant
subsequently filed a section 2-619 motion (735 ILCS 5/2-619 (West
1994) (section 2-619)) to dismiss Gavery's amended complaint,
arguing the release barred the claims. Gavery's response to the
motion, supported by his affidavit, claimed that he knew about only
one claim against defendant, which related to the dispute with PCFC
regarding whether credits were to be applied against the purchase
price. The circuit court granted defendant's motion to dismiss,
noting that the release was very specific and unambiguous. Gavery
appeals.
 I
 Gavery initially contends the circuit court erred in granting
defendant's motion to dismiss because the release does not apply to
claims not contemplated by the parties.
 Section 2-619 provides a mechanism to dispose of issues of law
or easily proved issues of fact. Glassie v. Papergraphics, Inc.,
248 Ill. App. 3d 621, 624, 618 N.E.2d 885 (1993). A dismissal on
the pleadings is warranted only where it is clearly apparent that
no set of facts can be proved which would entitle plaintiff to
recover. Wood v. Village of Grayslake, 229 Ill. App. 3d 343, 593
N.E.2d 132 (1992). A motion brought under this section admits all
well pleaded facts. Geick v. Kay, 236 Ill. App. 3d 868, 873, 603
N.E.2d 121 (1992).
 Releases are governed by contract law; accordingly, the
intention of the parties to a release must be determined from the
instrument itself, and construction of the instrument, where no
ambiguity exists is a matter of law. Farm Credit Bank v. Whitlock,
144 Ill. 2d 440, 447, 581 N.E.2d 664 (1991) (Whitlock). The
construction of an ambiguous release is a question of fact and
parol evidence is admissible to explain what the parties intended. 
Whitlock, 144 Ill. 2d at 447.
 Where the releasing party was unaware of claims other than
those contemplated by the release, it will be limited to the
specific claims contained in the release agreement. Whitlock, 144
Ill. 2d at 447. Where both parties were aware of an additional
claim at the time of signing the release, however, the general
release language of the agreement will be given effect to release
that claim as well. Whitlock, 144 Ill. 2d at 447.
 Gavery submits a release cannot be construed to apply to
claims not in the contemplation of the parties at the time the
release was executed. The recitals of the instant release,
however, specifically provide that: defendant "represented Gavery,
among other matters, in connection with" the sale of his business;
defendant negotiated the Purchase Agreement and the non-competition
agreement; PCFC made payments to Gavery but Gavery believed the
amounts of the payments were incorrect; Gavery was advised by
Rooks, Pitts & Poust that he "may have causes of action against
[defendant] as a result of Gavery's signing the Agreements";
defendant informed Rooks, Pitts & Poust "there may be a conflict
between [defendant] and Gavery regarding the sale of Primary Care";
and, Gavery "consulted with Rooks, Pitts and Poust regarding the
potential cause of action he may have against [defendant]." The
release further states Gavery waives all claims "as a result of the
sale of the assets and goodwill of Primary Care, including but
without limitation, any injury or damage sustained by Gavery by
virtue of entering into the Asset Purchase Agreement and/or the
Non-Competition Agreement." (Emphasis added.) The release
agreement is very specific and unambiguous: Gavery was advised by
Rooks, Pitts & Poust he may have claims against defendant arising
out of the Agreements. Gavery waived all claims against defendant
concerning the Agreements. Accordingly, the release bars Gavery's
claims.
 Gavery argues he intended only to waive his claim relating to
the credit arrangement under the Purchase Agreement and that a
party cannot waive a claim it is unaware of, relying upon Whitlock,
144 Ill. 2d at 447-48, and Myers v. Health Specialists, S.C., 225
Ill. App. 3d 68, 587 N.E.2d 494 (1992). Those cases are
distinguishable from the present case, however, because they
involve either ambiguous or general releases.
 Gavery contends Carlile v. Snap-On Tools, 271 Ill. App. 3d
833, 648 N.E.2d 317 (1995) (Carlile), is analogous to the present
case. In Carlile, plaintiff wanted to terminate his Snap-on tools
dealership. In order to terminate his dealership and be reimbursed
for inventory immediately, plaintiff was instructed to sign a form
after explaining that the termination was not caused by Snap-on
Tools Corporation. 271 Ill. App. 3d at 836. Plaintiff was also
required to sign a "Termination Agreement," which provided that
Snap-on would pay him "for the return of his inventory at current
dealer prices." 271 Ill. App. 3d at 836. The final paragraph of
the termination agreement contained a release provision which
stated that both parties to the agreement "waive any and all claims
they may have against each other arising out of the [Snap-on]
Dealership terminated by this Agreement." 271 Ill. App. 3d at 836. 
The Carlile court reversed the trial court's grant of summary
judgment for defendants finding that the words of general release
in the termination agreement applied only to the inventory. 271
Ill. App. 3d at 840. There was no evidence there to indicate
"plaintiff was aware of a legal fraud claim when he signed the
release," and a question of fact remained as to whether defendants'
conduct was fraudulent. 271 Ill. App. 3d at 840.
 The release in the present case is readily distinguishable
from the extremely broad and sweeping release in Carlile. The
release in Carlile, unlike the release in the instant case,
contained no recitals setting forth the facts upon which the
release was based. Although plaintiff in Carlile read the
termination agreement prior to signing, it mainly dealt with Snap-
on's promise to pay for returned inventory at current dealer prices
and only the last paragraph addressed the release of claims. 271
Ill. App. 3d at 836. Unlike Gavery, obviously a sophisticated
businessman and physician, plaintiff in Carlile was a high school
graduate who was unrepresented by counsel. 271 Ill. App. 3d at
835. The Carlile court also noted that plaintiff may have been
pressured by Snap-on to sign the termination agreement. 
Consequently, the court in Carlile reversed and remanded, in part,
because plaintiff's claim of duress raised a question of fact. 
Carlile, therefore, contains many circumstances, including, most
significantly, a vague and broadly sweeping release provision,
which differ substantially from the present case. Accordingly,
Gavery's contention must be rejected.
 Gavery also argues that there are issues of fact concerning
the scope of the release because his specific malpractice claims
were not within the contemplation of the parties when they executed
the release, relying upon his uncontradicted affidavit. Parol
evidence, however, is admissible only where a court determines that
a contract is ambiguous. (Emphasis added.) Whitlock, 144 Ill. 2d
at 447. The release in the present case unambiguously applies to
the Purchase Agreement and the non-competition agreement. Gavery,
who was advised by independent counsel regarding the release,
specifically released his claims relating to the Agreements. The
circuit court properly dismissed his complaint.
 II
 Gavery next asserts the circuit court erred in dismissing his
complaint because the release was unsupported by consideration or,
alternatively, the consideration was inadequate.
 A
 A release must be based upon consideration which consists
either of some right, interest, profit or benefit accruing to one
party, or some forbearance, detriment, loss of responsibility
given, suffered or undertaken by the other. White v. Village of
Homewood, 256 Ill. App. 3d 354, 356-57, 628 N.E.2d 616 (1993). The
preexisting duty rule provides that where a party does what it is
already legally obligated to do, there is no consideration because
there is no detriment. White, 256 Ill. App. 3d at 357.
 The release agreement states that Gavery may have a cause of
action against defendant; defendant agrees "to cooperate without
further charge," provided that Gavery release defendant from claims
he may have; and defendant agrees "to release any claims it may
have or believe it has against Gavery." Despite this explicit
language, Gavery contends there was no consideration because
defendant, as Gavery's former counsel, was legally and ethically
required to cooperate with him. Gavery reasons these alleged legal
and ethical obligations created a preexisting duty. Gavery's
argument is based on the attorney-client relationship. The
attorney-client relationship terminates, however, when the matter
for which the attorney has been retained is completed. See
Herbster v. North American Co. for Life & Health Insurance, 150
Ill. App. 3d 21, 28, 501 N.E.2d 343 (1986).
 The release provides that defendant was Gavery's "former
counsel." Gavery asserts for the first time in his reply brief
that a question of fact exists as to whether the attorney-client
relationship was terminated. Failure to raise an issue in an
opening brief results in a waiver of that issue. See People v.
Williams, 200 Ill. App. 3d 503, 513, 558 N.E.2d 261 (1990);
Official Reports Advance Sheet No. 26 (Dec. 22, 1993), R.
341(e)(7), eff. Feb. 1, 1994. Gavery has waived this issue.
 Waiver aside, the record demonstrates that defendant had
completed the negotiation and sale of Gavery's business prior to
Gavery's retention of Rooks, Pitts & Poust. Gavery thereafter
considered pursuing legal action against defendant. Gavery
acknowledges in his affidavit that in his dispute with PCFC, he
needed the help of defendant, his counsel "at the time of the
sale." The matter for which defendant was retained was completed
and Gavery regarded defendant as his former counsel. Accordingly,
the attorney-client relationship was terminated.
 The record also reveals that defendant was not Gavery's
fiduciary at the time the release was executed. See generally
State Security Insurance Co. v. Frank B. Hall & Co., 258 Ill. App.
3d 588, 595, 630 N.E.2d 940 (1994). Gavery had retained
independent counsel to represent him in his dispute with PCFC and
was informed by independent counsel that he "may have causes of
action against" defendant. Gavery and defendant then had opposing
interests. Consequently, no fiduciary relationship existed. See
Weisblatt v. Colky, 265 Ill. App. 3d 622, 625-26, 637 N.E.2d 1198
(1994); see also Article VIII, Illinois Rules of Professional
Conduct, 134 Ill. 2d R. 1.7.
 Notwithstanding the alleged existence of any legal or ethical
obligations, defendant agreed "to release any claims it may have or
believe it has against Gavery." (Emphasis added.) Gavery argues
defendant never waived its claim for legal fees because legal fees
were never discussed in the release. Gavery, however, owed fees to
defendant when the release was executed. Defendant released "any
claims," which could have included its claim for Gavery's fees and,
therefore, relinquished a right. Defendant also agreed to
cooperate "without further charge to Gavery in pursuit of his
remedies." By these promises, defendant forewent a right and
undertook an obligation. The release was supported by
consideration.
 B
 Gavery alternatively contends the amount of consideration was
inadequate to support the release and indicates that the parties
did not contemplate a release of the claims made in this case.
 A court's inquiry into whether a contract is supported by
consideration does not extend to examining the adequacy of the
consideration. Goodwine State Bank v. Mullins, 253 Ill. App. 3d
980, 1011, 625 N.E.2d 1056 (1993). It is not a court's function to
review the amount of consideration unless the amount is so grossly
inadequate as to shock the conscience of the court. Bonner v.
Westbound Records, Inc., 76 Ill. App. 3d 736, 743, 394 N.E.2d 1303
(1979). Mere inadequacy of consideration, in the absence of fraud
or unconscionable advantage, ordinarily is insufficient to justify
setting aside a contract. Mullins, 253 Ill. App. 3d at 1011.
 Gavery was advised by independent counsel in relation to the
release and he was informed that he might have claims against
defendant arising from the Purchase Agreement and the non-
competition agreement. Gavery has not alleged fraud or
unconscionable advantage and the record shows none. The
consideration was not so insufficient as to shock the conscience of
the court.
 For the foregoing reasons, the order of the circuit court is
affirmed.
 Affirmed.
 SCARIANO and DiVITO, JJ., concur.